UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA WILSON,

        Plaintiff,                       Case No. 23-cv-11112

v.                                         HON. MARK A. GOLDSMITH

CITY OF DETROIT et al.,

        Defendants.

_____/

**OPINION & ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART (Dkt. 23)**

      This case arises from an incident of credit card theft involving Plaintiff Sandra Wilson. Wilson was arrested after surveillance footage identified her taking a credit card that did not belong to her from a gas station store counter and giving it to an unidentified driver of a car at the station, who then drove off and proceeded to incur illegal charges on the card. When asked about the incident during later questioning by two Detroit police officers, Wilson repeatedly claimed that she had returned the credit card to the clerk inside the store. But Wilson's statements were belied by the video surveillance—which plainly showed Wilson exiting the store with the credit card and giving it to the unidentified driver. These apparent lies prompted the officers to arrest her, following which the Wayne County Prosecutor's Office brought charges against Wilson for transaction device theft. At her criminal trial, the trial judge directed a verdict in her favor.

      Wilson now brings several claims against Defendants Crystal Anderson, Samuel Pionessa, and the City of Detroit:

- Count I: 42 U.S.C. § 1983 claims against the individual Defendants for procedural and substantive due process violations, wrongful seizure, unlawful detention without

> probable cause, malicious prosecution, excessive force, Brady violation, unlawful interrogation, and First Amendment retaliation;

- Count II: a municipal liability claim against the City of Detroit ; and

- Counts III–VI: state law claims against the individual Defendants for false arrest, false imprisonment, gross negligence, false light, and intentional infliction of emotional distress.

Defendants filed a motion for summary judgment (Dkt. 23).[1] For the reasons that follow, the Court grants Defendants' motion for summary judgment in part, as to certain claims, and dismisses other claims, either by stipulation or because the Court declines to exercise supplemental jurisdiction.

## I. BACKGROUND

Sandra Wilson brings this complaint after being arrested and prosecuted for her alleged involvement in credit card theft. The incident in question took place at a gas station store on June 16, 2022. Am. Compl. ¶ 15 (Dkt. 15). Surveillance footage from the store shows Wilson and two other women: Dinah Brundidge (the owner of the stolen credit card) and an unidentified woman. Id. ¶ 15. The unidentified woman used her credit card to complete a transaction and left the store to return to her car at the gas station pumps outside. Id. ¶ 24. At this point, Brundidge went to the counter and, although she did not make any purchase, inadvertently left her credit card on the counter. Id. ¶ 26.

Wilson then noticed the credit card on the counter when she went to make a purchase. Id. ¶ 27. Wilson claims that she did not see whether it was Brundidge or the unidentified woman who had left the credit card on the counter, but "thought the credit card belonged to the [unidentified

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Wilson's response (Dkt. 28) and Defendants' reply (Dkt. 34).

2

woman] because she was the only person who used a credit card while Wilson was in line." Resp. at 3–4. Wilson then exited the store and surveillance footage shows her briefly speaking with the unidentified woman, who at this point is in her car at the pumps. Am. Compl. ¶ 29. Wilson claims that she asked the unidentified woman whether the credit card on the counter belonged to her, to which she claims the "woman respond[ed] affirmatively." Resp. at 4.

Wilson returned to the store, retrieved the card off the counter, and handed the card to the unidentified woman who drove off. Am. Compl. ¶¶ 30–31. Wilson did not receive anything from the unidentified woman in exchange. Id. ¶ 32. The unidentified woman then went to several stores and used Brundidge's credit card to make over $200 in illegal purchases. Id. ¶¶ 33–34.

On June 24, 2022, Anderson, who was the police officer in charge of the case, published on the police department's official Twitter and Facebook pages a photo of Wilson and the unidentified woman taken from surveillance footage. The caption read: "The suspects below are wanted for illegally using victim's credit card" on the police department's official Twitter and Facebook pages. Id. ¶ 40. Wilson learned of the social media posts the following day and went to the 9th Precinct to have the social media posts removed. Id. ¶¶ 49–50. She told the officer at the 9th Precinct that "she did not commit any crimes and ha[d] documentation of her transactions" from June 16th. Id. ¶ 51. Wilson was instructed that she would need to go to the 7th Precinct to have the posts removed. Id. ¶ 53.

At the 7th Precinct, Wilson met with Anderson and Pionessa. Id. ¶ 54. During the interview, which allegedly turned into a custodial interrogation, Wilson was asked about the credit card. Id. ¶ 60. Wilson repeatedly claimed that she had returned the credit card to the store clerk, Br. in Supp. Mot. at 2; see 6/25/22 Interview Tr. at 21–23, 27–28 (Dkt. 49-1). She now alleges that she "believed that Defendants were asking her questions about a completely different

3

day/encounter," Resp. at 7. Wilson requested to speak with her lawyer and the two officers terminated the interview and arrested Wilson. Am. Compl. ¶¶ 62–64.

Because police officers have no authority to charge individuals with crimes, the officers drafted a warrant request and submitted the surveillance footage as well as a video of the interrogation to the Wayne County Prosecutor's Office. Mot. at 3; Br. in Supp. Mot. at 8. That office brought two charges: one count of Financial Transaction Device, Stealing/Retaining Without Consent; and one count of Financial Transaction Device Illegal Sale/Use. Mot. at 3. At the ensuing criminal trial, the trial court granted a motion for directed verdict and dismissed all charges against Wilson. Resp. at 8.

## II.     ANALYSIS[2]

Defendants have moved for summary judgment regarding all federal and state-law claims brought by Wilson. Some of these claims Wilson stipulates should be dismissed.[3] The balance of the federal claims are discussed below and are dismissed with prejudice. The balance of the state claims are dismissed without prejudice because no federal claims remain.

---

[2] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

[3] Wilson has stipulated to the dismissal of § 1983 claims against the individual Defendants for procedural and substantive due process violations and excessive force; state law claims against the individual Defendants for false arrest, false imprisonment, and gross negligence; and municipal liability claims against the City of Detroit. Resp. at iii–iv. Accordingly, these claims are dismissed with prejudice.

A. Federal Claims

1. Fourth Amendment Wrongful Seizure

Wilson maintains that she was subject to wrongful arrest in violation of the Fourth Amendment because the individual Defendants lacked probable cause to make the arrest. Resp. at 12. "[A]n arrest constitutes an unreasonable seizure in violation of the Fourth Amendment" only when there is an "absence of probable cause." United States v. Torres-Ramos, 536 F.3d 542, 554 (6th Cir. 2008); Michigan v. DeFillipo, 443 U.S. 31, 36 (1979) (noting that a warrantless arrest does not violate the Fourth Amendment if there is probable cause to make the arrest); Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002) ("In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause.").

Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." DeFillippo, 443 U.S. at 37. An officer is required to "consider the totality of the circumstances," including both the "inculpatory and exculpatory evidence," Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000) (emphasis omitted), but "only the probability of criminal activity" is required, "not some type of 'prima facie' showing," Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988) (citing Illinois v. Gates, 462 U.S. 213, 235 (1983)). "The inquiry, in other words, focuses on the perspective of the officer, rather than that of the arrestee." Mays v. Columbus Police Dep't, No. 2:20-cv-1060, 2021 WL 5231885, at *2 (S.D. Ohio Nov. 10, 2021).

As Defendants point out, "the information known to the Defendant Officers was that [Wilson] had knowingly and intentionally taken a credit card not belonging to her out of a gas station and given it willing to a stranger without checking the identity of the stranger against the

5

name on the credit card. [Wilson] then voluntarily presented herself [to Defendants] and lied repeatedly about what she did with the credit card." Br. in Supp. Mot. at 6.

Wilson suggests that "Defendants . . . fail to attach or cite to any evidence in support of this bare assertion." Resp. at 15. Yet Defendants' version of facts is plainly corroborated by the surveillance footage of the gas station—where Wilson is seen "tak[ing] a credit card not belonging to her . . . and giv[ing] it willingly to a stranger"—and by the transcript of the interrogation—where Wilson, on multiple occasions, contradicts the surveillance footage and claims that she picked up the credit card and handed it to the gas station clerk. See 6/25/22 Interview Tr. at 21–23, 27–28 (Dkt. 49-1).

Considering this totality of evidence, a "prudent person" could reasonably conclude that Wilson was intentionally misrepresenting the incident to cover up her role in a criminal offense. See United States v. Anderson, 923 F.2d 450, 456–457 (6th Cir. 1991) (acknowledging that "a suspect's lying to law enforcement . . . in conjunction with other facts establishing a reasonable suspicion" would "justify a man of reasonable caution in finding probable cause"); United States v. Sholola, 124 F.3d 803, 815 (7th Cir. 1997) (finding probable cause when a defendant, suspected of using a fraudulent license to receive a cash advance, lied to a police officer because the "inability to accurately respond to the questions" posed by the officer "transformed this reasonable suspicion into probable cause") (punctuation modified); United States v. Calhoun, 834 F. App'x 128, 133 (6th Cir. 2020) ("This court has recognized that false statements to law enforcement can support reasonable suspicion.").

Even if, as Wilson claims, "she d[id] not know what the Defendants [we]re questioning her about" and that she "thought that Defendants were talking about a completely different date/time when she did return a credit card to the gas station clerk," Resp. at 14–15, the individual

6

Defendants were reasonably justified in interpreting Wilson's alleged confusion—and seeming lies to the police officers—as nothing more than an attempt to mislead or lie about her involvement.

Wilson's remaining arguments are similarly unavailing. She maintains that because the crimes she was eventually charged with were "specific intent crime[s]," there is "no way for Defendants to even arguably contend that probable cause existed" because they lacked evidence that "she intended to defraud or cheat someone." Resp. at 14.

However, probable cause "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Crockett v. Cumberland Coll., 316 F.3d 571, 582 (6th Cir. 2003) (punctuation modified). An officer is not required to "investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." Baker v. McCollan, 443 U.S. 137, 145–146 (1979). Nor is a "valid arrest based upon then-existing probable cause . . . vitiated if the suspect is later found innocent." Criss, 867 F.2d at 262. Thus, the absence of evidence "demonstrat[ing] that Wilson intended to defraud or cheat" someone, Resp. at 15 (emphasis added), does not negate a finding of probable cause. In any case, Wilson's apparently repetitive lies are probative of an intent to defraud or cheat.

For the foregoing reasons, the Court concludes that the individual Defendants had probable cause to make the warrantless arrest following the interrogation. Wilson's Fourth Amendment claim for wrongful seizure, therefore, fails as a matter of law.

**2. Fourth Amendment Malicious Prosecution**

Wilson additionally contends that the individual Defendants instigated a malicious prosecution by influencing the prosecutor into bringing charges against her using false and misleading statements in their warrant request. Resp. at 19.

Malicious prosecution is a "separate constitutionally cognizable claim . . . under the Fourth Amendment." Thacker v. City of Columbus, 328 F.3d 244, 259 (6th Cir. 2003). To succeed on a malicious prosecution claim under § 1983, plaintiff must show that: (i) a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute"; (ii) there was a "lack of probable cause for the criminal prosecution"; (iii) plaintiff suffered a "deprivation of liberty" from the prosecution "apart from the initial seizure"; and (iv) the criminal proceeding was "resolved in the plaintiff's favor." Sykes v. Anderson, 625 F.3d 294, 308–309 (6th Cir. 2010) (punctuation modified).

As discussed above, there was probable cause in this matter. Wilson's claim of wrongful prosecution founders on that ground.

It is defective on the additional ground that the individual Defendants did not make the decision to prosecute or sufficiently influence or participate in it. A defendant's assertion that he "did not make the decision to prosecute does not per se absolve them from liability," but, in such a scenario, a plaintiff must still prove that the defendant either "influence[d] or participate[d] in the decision to prosecute." Id. at 311 (punctuation modified) (emphasis in original). "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." Id. at 311 n.9. Making "affirmative misrepresentations and omissions" in a warrant request which "clearly led to" the decision to prosecute can lead to liability for malicious prosecution, but "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." Id. at 313–314 (punctuation modified).

The individual Defendants lacked the authority to make the charging decision themselves—and Wilson does not contest this. Mot. at 3. Therefore, the basis for Wilson's malicious prosecution claim is that the individual Defendants unlawfully "influenced" the initiation of the prosecution by "fabricating evidence," "utilizing false statements and misleading reports," and "omi[tting]" relevant information in their warrant request. Resp. at 19.

Specifically, Wilson alleges that the warrant request was "false" and "misleading" because the individual Defendants sought to "imply[]" that Wilson had acted with "malice and deliberate premeditation" when they stated that Wilson "st[ood] in the parking lot and watche[d] [Brundidge] pull off leaving the location." Resp. at 7. And Wilson argues that the warrant request had material "omissions" because it never expressly mentioned several conclusions that would be favorable for Wilson—but not all of which are readily apparent in the surveillance footage—including that Wilson "appeared to show[] [the] credit card to the clerk prior to taking it outside" and that "Wilson asked the unidentified woman if the credit card was hers and never received anything in exchange for providing the credit card." Resp. at 23. None of these allegations has any merit.

First, Wilson does not specify what, if any, evidence submitted to the Wayne County Prosecutor's Office was "fabricat[ed]," so this contention fails for lack of specificity.

Second, Wilson does not substantiate how the statement included in the warrant report—that Wilson "st[ood] in the parking lot and watche[d] [Brundidge] pull off leaving the location"—was either "false" or "misleading." Wilson's imposition of her own subjective interpretation onto an otherwise factual statement describing the surveillance footage does not render the statement "false" or "misleading."

9

Third, there is no evidence that the prosecutor made their charging decision on the basis of this isolated statement. Meeks v. City of Detroit, 220 F. Supp. 3d 832, 840 (E.D. Mich. 2016) (noting that statements must be "materially false" and that the "prosecutor [must] actually rel[y] on [the false statements]" in bringing a charge to sustain a malicious prosecution claim (emphasis added)). In fact, given that the prosecutor had access to the surveillance footage—which provided graphic evidence that Wilson had lied to the police—there is no "reason to think the prosecutor did not exercise independent judgment, after reviewing the video, and decided to institute charges based on" this independent review rather than on a single phrase in a police report. Jarvela v. Washtenaw Cnty., No. 19-12157, 2021 WL 3286673, at *14 (E.D. Mich. Aug. 2, 2021), rev'd in part, 40 F.4th 761 (6th Cir. 2022).

Fourth, Wilson's allegations of "omissions" also plainly contradict the record. Even though the warrant request did not expressly narrate every frame of the surveillance footage—as Wilson suggests it should—the individual Defendants provided the entire surveillance footage from the gas station to the prosecutor who was free to examine the video and arrive at the same, or different, conclusion from the footage.[4] Jarvela, 2021 WL 3286673, at *14 ("[W]here video exists of the encounter, it seems extraordinarily unlikely that a prosecutor would rely solely on a police report . . . .").

---

[4] Wilson additionally maintains that there is a dispute of fact here because "the warrant request only states that the video [was] available" to prosecutor and "not that it was presented to the prosecutor." Resp. at 22–23 (second emphasis added). The Court fails to see how this changes the outcome—the individual Defendants forwarded to the prosecutor all the evidence available to them; how and whether the prosecutor, in "[their] discretionary review" and "charging discretion," reviewed the evidence has no bearing on the individual Defendants' conduct. Kinkus v. Vill. of Yorkville, 289 F. App'x 86, 92 (6th Cir. 2008) (Because plaintiff "cannot contest the accuracy of [the officer's] police report" and because the officer "supplied only truthful information to [the] Prosecutor," there is no basis for a malicious prosecution claim.).

10

Wilson has not met her burden of showing that the individual Defendants unlawfully "influenced" or "participated" in the prosecutor's decision to begin criminal proceedings by making false and misleading statements or through material omissions. Thus, the Fourth Amendment malicious prosecution claim, too, fails as a matter of law.

### 3. First Amendment Retaliation

Wilson also raises a First Amendment retaliation claim against the individual Defendants, alleging that she was "subjected to an arrest for having engaged in constitutionally protected speech, such as criticizing how Defendants were treating her and ruining her life, invoking her right to counsel, and demanding to see the [surveillance] video." Resp. at 16.

While the First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out," Hartman v. Moore, 547 U.S. 250, 256 (2006), "§ 1983 claims for retaliatory prosecution and arrest fail as a matter of law if the defendant had probable cause," Everson v. Calhoun Cnty., 407 F. App'x 885, 887–888 (6th Cir. 2011); see also Hartman, 547 U.S. at 252 ("We hold that want of probable cause must be alleged and proven" in an "action against criminal investigators for inducing prosecution in retaliation for speech."); Nieves v. Bartlett, 587 U.S. 391, 402 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); Barnes v. Wright, 449 F.3d 709, 720 (6th Cir. 2006) (finding that because the "defendants had probable cause to seek an indictment and to arrest" the plaintiff, the "First Amendment retaliation claim accordingly fails as a matter of law").[5] As discussed above, the Defendants here had probable

---

[5] The cases Wilson cites do not support her position. Resp. at 16. Green v. Barber, 310 F.3d 889 (6th Cir. 2002) was decided before the Supreme Court resolved a circuit split as to whether an absence of probable cause can support a § 1983 retaliation claim in Hartman v. Moore. And the circumstances surrounding the retaliation claim in Bloch v. Ribar, 156 F.3d 673 (6th Cir. 1998)—

11

cause to arrest Wilson following the interrogation. Thus, Wilson's First Amendment retaliation claim cannot survive, and the individual Defendants are entitled to summary judgment on this claim.

### B. Claims Forfeited for Failure to Submit Any Developed Argumentation

Wilson also raised § 1983 claims for unlawful detention based on fabricated evidence, a Brady violation, and unlawful interrogation. Am. Compl. ¶ 79. The individual Defendants challenge all three claims in their summary judgment motion. Br. in Supp. Mot. at 6, 10–11. Yet Wilson's response brief completely fails to mention unlawful detention or Brady violation. And, in referencing the claim for unlawful interrogation, only tersely concludes that she was "unlawfully interrogated by Defendants for nearly one hour after requesting [a]n attorney on multiple occasions," Resp. at 6, without any citation of authority how that translates into a § 1983 claim.

In failing to oppose the individual Defendants' motion or to develop any argumentation beyond her summary assertions, Wilson has forfeited these claims, and the Court must grant summary judgment for the individual Defendants. Scott v. Tennessee, 878 F.2d 382, at *2 (6th Cir. 1989) (unpublished table opinion) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."); McPherson v. Kelsey, 125 F.3d 989, 995–996 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").[6]

---

where a county sheriff disclosed personal and offensive details about the plaintiff after she criticized the sheriff's performance in a news article—are entirely dissimilar to those at issue here.
[6] In any event, at least Wilson's first two claims—unlawful detention and Brady violation—would fail even on their merits. First, Wilson's detention following her arrest was permissible because, for the reasons outlined below, the individual Defendants had probable cause, and Wilson has not

### C. Remaining State Law Claims

Because the Court grants the individual Defendants' motion to dismiss as to the federal claims, the Court will use its discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims by dismissing these claims without prejudice. 28 U.S.C. § 1367(c)(3); United Marine Workers of Am. v. Gibbs, 383 U.S. 715, 726–727 (1996) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## III. CONCLUSION

For the foregoing reasons, the Court grants, in part, Defendants' motion for summary judgment (Dkt. 23) as follows. Wilson's federal claims are dismissed with prejudice; Wilson's state-law claims for false arrest, false imprisonment, and gross negligence are also dismissed with prejudice. Wilson's state-law claims for false light and intentional infliction of emotional distress are dismissed without prejudice.

SO ORDERED.

Dated: September 26, 2024  
Detroit, Michigan

s/ Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

---

provided any support suggesting that any evidence was fabricated by Defendants. Kyles v. City of Detroit, No. 05-74692, 2007 WL 188098, at *5 (E.D. Mich. Jan. 22, 2007) ("A Fourth Amendment claim does not arise out of continued wrongful detention where the arrest was with probable cause because there is no separate determination that there is probable cause to detain an individual . . . ."). Second, Wilson's Brady violation claim also lacks merit because not only has she failed to identify any material exculpatory or impeaching evidence withheld by the individual Defendants, but, even if evidence were withheld, she suffered no "prejudice" given that the trial court granted a directed verdict. Strickler v. Greene, 527 U.S. 263, 281–282 (1999) (noting that there is no *Brady* violation unless "evidence . . . favorable to the accused" was withheld and the accused suffered some "prejudice" such as a conviction).